DOCKETED
JUN 1 4 2002

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JULIUS DAVIS, JR., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 01 C 4198 |
| vs. | ) | |
| | ) | JUDGE GETTLEMAN |
| SHERIFF MICHAEL SHEAHAN, | ) | |
| et. al., | ) | |
| | ) | |
| Defendants. | ) | |

FILED
JUN 1 3 2002
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**PLAINTIFF'S MEMORANDUM IN RESPONSE TO DEFENDANT SHERIFF MICHAEL SHEAHAN'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, JULIUS DAVIS, JR., by and through his attorneys, GREGORY E. KULIS AND ASSOCIATES, submits the following memorandum in support of his response to Defendant SHERIFF MICHAEL SHEAHAN'S motion for summary judgment.

**STATEMENT OF FACTS**

The Plaintiff, Julius Davis, Jr., arrived at Cook County Jail in early 2001. During that time, the Superintendent approached Mr. Davis about working for him as an informant in the jail. In return, Mr. Davis received special privileges such as commissary allowances and extra time out of his cell. (Ex. 3, p. 27-29, 157, 230, 236). On May 25, 2001, the Plaintiff, Julius Davis, Jr., was housed in Division IX at Cook County Jail. (Add'l facts ¶1). On that date, he was attacked by several correctional officers while other officers stood by and allowed the beating to occur. (Add'l facts ¶8, 9). The officers involved in the incident were the Defendant officers-Sgt. Walden, Sgt. Navarette, Sgt. Clemons, Officer Morrison, Officer Paolino and Officer Malloy. As a result of the attack, Mr. Davis suffered a dislocated shoulder, broken nose, an injured finger, cuts on his head and various other bruises and contusions. (Ex. 2). The Plaintiff received medical treatment at Cermak Health Services after the incident and was asked to follow up on

May 29th. After May 29th, the Plaintiff needed additional medical treatment because of pain from his injuries and because he was throwing up blood. The officers would not allow Mr. Davis to receive medical care so on June 7, 2001, the Plaintiff's attorneys sent a letter to Supt. Imhoff requesting that Mr. Davis be provided proper medical care while he remained at the jail. (Ex. 5, 14). After the letter was sent, the Plaintiff was taken to receive proper medical care.

There was also an internal affairs investigation done into the incident on May 25th. (Ex. 15). The investigators took several pictures of the Plaintiff's injuries and interviewed various officers and inmates to determine what occurred on the tier. (Ex. 15). There were several inmates who stated Mr. Davis was in fact assaulted but not surprisingly, no officers corroborated this version of the incident. Even the investigators questioned what occurred on the tier however, none of the Defendants were disciplined or provided any additional supervision or training. (Ex. 15, 16). As Mr. Davis testified in his deposition, Division IX at Cook County Jail is known for officers brutalizing inmates. (Ex. 3, p. 237-240). Sgt. Walden and Sgt. Navarette usually lead this pack of officers who take part in such behavior. (Ex. 3, p. 238-240). However, they have never been specifically questioned by the Sheriff or provided any additional supervision or training to help with their problem. (Ex. 6, 13). To date, none of these Defendants have been disciplined for any of their actions. (Ex. 13, Add'l facts ¶13). In June, 2001, Julius Davis, Jr. was transferred out of Cook County Jail to Dixon Correctional Center.

## STANDARD OF REVIEW

Summary judgment is proper only when the record shows there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A "genuine issue of material fact exists only where there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Dribeck Importers, Inc. v. G.

Heileman Brewing Co., 883 F.2d 569, 573 (7th Cir. 1989) quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). While summary judgment is to be encouraged as an aid in the expeditious disposition of a lawsuit, it is a drastic means of disposing of litigation and therefore, should be allowed only when the right of the movant is clear and free from doubt. Purtill v. Hess, 111 Ill.2d 229, 489 N.E.2d 867 (1986). The evidence must be viewed in the light most favorable to the nonmoving party and all factual inferences are to be taken against the moving party and in favor of the nonmoving party. Valley Liquors, Inc. v. Renfield Importers, Ltd., 822 F.2d 656, 659 (7th Cir. 1987). When viewing the facts of this case in the light most favorable to the Plaintiff, it is clear that summary judgment is not proper in this case.

## ARGUMENT

The Plaintiff alleges that Defendant Sheahan has a custom, practice and policy to allow supervisory personnel to remain in their positions even after they are disciplined for excessive force and also to deprive inmates of medical care after they are assaulted in an effort to cover up the incident. Contrary to the Defendant's claim, the Plaintiff has established that Defendant Sheahan has a custom, practice or policy allowing the individual Defendants to brutalize inmates without fear of discipline or any consequences. Defendant Sheahan, in his official capacity, can be held liable under §1983 if the Plaintiff shows that he was deprived of a constitutional right as a result of an official municipal policy or custom that was the proximate cause of his injury. Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 690 (1977). In the case at bar, the Plaintiff can show that these elements have been established and therefore, Defendant Sheahan's motion for summary judgment should be denied.

### A.  The Defendant officers have a history of abuse allegations brought against them with no action taken by Defendant Sheahan as a result.

Although Sgt. Walden and Sgt. Navarette have been investigated various times for using excessive force on inmates, Defendant Sheahan has not disciplined them or taken any other action against them to ensure that similar incidents do not take place in the future. (Ex. 6, 13). Each time discipline has been recommended against Sgt. Walden and Sgt. Navarette, for one reason or another, the discipline has been overturned during the appeal process. The investigations relate to allegations made by inmates accusing these officers of using excessive force. Despite the numerous allegations and investigations, none of these Defendants have been demoted, provided extra supervision, counseling or any sort of training to address this serious issue.

Specifically, in 1997, an inmate named Urcino made allegations of abuse against Sgt. Walden and Sgt. Navarette. The allegations were sustained against these two sergeants and suspension was recommended. (Ex. 11, 12). However, the officers appealed the decision and won. (It should be noted that the incident with Mr. Urcino in Division IX, Tier 1-f, the same place Mr. Davis was housed at the time he was attacked). Also, in 1999, another investigation was done where again, Sgt. Walden and Sgt. Navarette were investigated for abusing an inmate. Again, the allegations were sustained, there was discipline recommended against them but when they appealed, the discipline was overturned. (Ex. 9, 10). It is also interesting to note that of all the sergeants in Division IX, Sgt. Walden and Sgt. Navarette find themselves investigated together not one or two times, but at least three times. There is a strong indication that these two act together in beating inmates and depriving them of their rights while in jail and also in the subsequent cover-up.

4

The incident with Mr. Davis is the third time in four years these sergeants have been investigated. There is obviously a pattern of abuse or at least custom or policy in place which allows these officers to repeatedly engage in illegal behavior. The officers have no fear of discipline or any action being taken against them even when allegations are sustained against them. They have gotten away with assaulting inmates in the past and figure they will continue to do so. Defendant Sheahan has no appropriate way of disciplining officers when excessive force allegations are made against them. In Mr. Davis' case, the Inspector General, Joseph Shaughnessy, questioned the outcome and findings of the investigation and asked that further inquiry be made. (Ex. 16). Even he was not convinced that the officers were being truthful. Yet again, nothing was done.

Further, none of the officers have ever received extra supervision, counseling or special training to address the issue of assaulting inmates. (Ex. 6). According to the 1st Assistant Chief Deputy Sheriff, Daniel P. Brennan, deputy sheriff's that are disciplined *"generally* do not receive any additional training or supervision as a result of the training." (Ex. 6). Obviously, this is not an area of priority or importance to Defendant Sheahan because it just makes sense that if someone has a tendency to brutalize inmates, they should be more closely watched and provided extra resources to help with their problem. Even if an officer is not disciplined, a system should exist allowing for extra supervision and training of officers that are repeatedly investigated. Inmates do not cry wolf all the time. Defendant Sheahan has no system which tracks the officers who are investigated and flags them for potential future problems with inmates. Instead, officers are given free reign over inmates and are given tremendous freedom while supervising them. They do not have to answer to anyone, let alone Defendant Sheahan.

5

Defendant Walden and Navarette are also sergeants. What message is Defendant Sheahan giving by allowing two individuals with a history of abusing inmates to remain in supervisory positions? Even when discipline is recommended, by independent investigation, that disciplinary recommendation is promptly thrown out upon filing an appeal. Obviously, their subordinates will believe they are free to do what they want because even the supervisors are not disciplined, reprimanded or demoted in any way. There is no deterrent to using excessive force on inmates. Rather, the message seems to be that Defendant Sheahan will turn a blind eye and refuse to correct the problem or hold anyone accountable for an inmate's injuries.

**B.    Based on the Defendants' history, the Plaintiff has established a custom, practice or policy against Defendant Sheahan.**

Certain of the Defendants have a history of excessive force complaints, let alone investigations, against them yet none of them have been disciplined by Defendant Sheahan. What does that tell you about Defendant Sheahan? Obviously, that he fails to properly discipline, train or supervise his officers and in this case, his sergeants whose duty it is to supervise other officers. What incentive do officers have to treat inmates properly when their own supervisors, these sergeants, mistreat the inmates themselves? According to <u>Kindle v. City of Harvey</u>, 2002 WL 230779 (N.D.Ill.), failure to train, supervise or discipline employees properly can be considered a custom or policy where the failure amounts to a deliberate indifference to the inmate's rights. Although <u>Kindle</u> dealt with a policy claim against a city, the same reasoning applies to Mr. Davis' case and thus, to Defendant Sheahan.

The Internal Affairs department will investigate an incident and make a recommendation of discipline. In the previous cases involving Sgt. Walden and Sgt. Navarette, suspension was recommended but the sergeants then filed an appeal and the discipline was not upheld. There

was no further investigation or reason given for the discipline not being carried out. At the final hearing, the officers have the opportunity to testify and they are often also accompanied by a union representative. Thus, the officers have one more chance to get out of being discipline and to plead their case. Ironically, the victim in the case, the inmate himself, does not get to testify or give his side of the story at this final appeal hearing. This is inherently unfair and seems that the hearing is just another way out for the officers so they do not have to face the consequences of their actions. They are protected by layers upon layers of ways out.

In light of the Defendant officers' duties and this protection they receive during the investigation and disciplinary process, the need for additional or better training by Defendant Sheahan is obvious. Even if the Defendants are not disciplined, Defendant Sheahan should at least do something to combat the problem of excessive force. The lack of proper training or supervision in this case is so likely to result in a violation of the inmates' rights that Defendant Sheahan's policy of passivity can be reasonably said to be deliberately indifferent to the need. The failure to provide proper discipline, training or supervision is a policy Defendant Sheahan is responsible for and should be held liable for because it has caused injury. City of Canton v. Harris, 489 U.S. 379, 390 (1989). The Supreme Court in Harris found two scenarios where a court could find deliberate indifference for failing to train officers. One situation was "where a city fails to react to repeated complaints of constitutional violations by its officer" and the other was "when the city fails to provide adequate training in light of foreseeable serious consequences that could result from lack of instruction." City of Canton v. Harris, 489 U.S. 390.

Mr. Davis' case falls within these scenarios and he has shown culpability and a causal link as required by Harris. Mr. Davis has shown that there have been repeated complaints against officers, including two of the sergeant defendants in this case, with Defendant Sheahan

7

doing nothing in response. Also, Defendant Sheahan has failed to provide adequate training, supervision or discipline despite the foreseeable consequences of what would happen without it, in this case, inmates like Mr. Davis being brutalized. Defendant Sheahan's culpability is clear. He had knowledge or constructive knowledge of the problems within his jail because of the widespread complaints against his officers and the frequency of such. Because he had this knowledge and failed to take any measures to remedy the problem, there is a clear inference of a policy or custom attributable to Defendant Sheahan. <u>Williams v. City of Chicago</u>, 658 F.Supp. 147, 152 (N.D.Ill.1987). Defendant Sheahan's failure to take any action in providing extra training, supervision or any real discipline shows his deliberate indifference towards inmates such as Mr. Davis.

Mr. Davis has also shown that his injury was caused by Defendant Sheahan's policy or custom. If Defendant Sheahan had implemented measures to properly train or supervise the officers who received excessive force complaints or who were investigated for such, the officers in this case may have either received proper training and supervision or they may have even been demoted or terminated. Defendant Sheahan ignores the stream of brutality investigations and he ignores the stream of disciplinary recommendations. He has a choice to deal with the problem head on and he clearly chooses look the other way. As a result, Mr. Davis was attacked by supervisors who were allowed to remain in their authority positions with no fear of consequences. Not only did Sgt. Walden and Sgt. Navarette punch, kick and strike Mr. Davis, but they are the ones who started the entire beating with Sgt. Navarette stating, "kick his ass." (Ex. 3, p. 35).

Clearly, Mr. Davis has shown that Defendant Sheahan's custom and policy in failing to provide adequate training and supervision was the "moving force" behind his constitutional

8

rights being violated. <u>Monell v. Department of Social Services</u>, 436 U.S. at 694. Not only was Mr. Davis assaulted and injured he had difficulty receiving medical treatment from the same officers who injured him. (Ex. 5, 14). Obviously, these officers did not want him to receive care for the injuries they themselves had caused. Defendant argues that the Plaintiff was told to lock up and refused and that is when force was used to subdue him. The Plaintiff himself disproves this version of the facts and for the purposes of this motion, all facts must be taken in the light most favorable to the Plaintiff, the non-moving party. The Plaintiff testified that the Defendant officers arrived on the tier and just started beating him until they were ready to take him down to the bullpen. (Ex. 3, p., 35, 36, 147). Mr. Davis also testified that the beating continued even after he was taken into the elevator and down to the bullpen. (Ex. 3, p. 39-45). The Plaintiff's facts need to be taken as true and therefore, we cannot use the Defendants' version that force needed to be used because of the Plaintiff's refusal to lock up. The Plaintiff's version is completely different and is the set of facts this Court should rely on in analyzing this claim. However, even if force had to be used, it must be reasonable force, not excessive force causing a dislocated shoulder, broken nose and injuries to the Plaintiff's head and hand. Again, the Plaintiff's facts should be used at true for the purposes of this motion.

      The Defendant also argues that more proof than a single incident is necessary to allow a claim for municipal liability to go to the jury. However, as long as the Plaintiff can prove the existence of a policy, one incident is sufficient to establish <u>Monell</u> liability under §1983. <u>City of Oklahoma v. Tuttle</u>, 471 U.S. 808, 823-24 (1985). Mr. Davis testified that beatings were common in Division IX and that there was sort of a crew that participated in the beatings. (Ex. 3, p. 237-242). Conveniently, and not surprisingly, the officers all state they have never seen an inmate get beat. Common sense and everyday experience tells us that Mr. Davis' visions are

9

more accurate than the officers'. The issue goes back to Defendant Sheahan—had he properly provided extra training, supervision or in this case, demotion and discipline, Mr. Davis would not have been assaulted and injured by the officers while in jail. Defendant Sheahan should not be allowed to avoid liability in this case.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Plaintiff, JULIUS DAVIS, JR., prays that this honorable court deny the Defendant Sheahan's Motion for Summary Judgment and grant any other such relief this Court deems appropriate.

Respectfully submitted,

_____
GREGORY E. KULIS AND ASSOCIATES

GREGORY E. KULIS AND ASSOCIATES
30 North LaSalle Street, Suite 2140
Chicago, Illinois 60602
(312) 580-1830